CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar Number 14853
ALLISON REESE
Nevada Bar Number 13977
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: allison.reese@usdoj.gov
*Attorneys for the United States of America*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCISCO JAVIER MARES, aka "Pancho",<br><br>Defendant. | Case No.: 2:20-cr-00018-JCM-EJY<br><br>**Government's Response to Defendant's Sentencing Memorandum [ECF No. 63]** |

Certification: This response is timely filed.

## I.  Introduction

In October 2019, the Defendant Francisco Mares conspired with his co-defendant to distribute methamphetamine within the Las Vegas community. In furtherance of that conspiracy, Mares distributed approximately five pounds of methamphetamine to a DEA confidential source. He has pled guilty to that conduct[1] and will come before the Court to be sentenced on March 23, 2022. At that time, if the Court determines that it will go forward with sentencing, the

---

[1] Currently pending before the Court is the government's motion for a status conference in which the government seeks a conference with the Court to address statements made by Mares that appear to negate the factual basis set forth in the plea agreement. *See* ECF No. 71.

1

government will respectfully request the Court to sentence Mares within the applicable guidelines range.

## II.  Argument
### a. Term of Imprisonment

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).  In fashioning a sentence, the Court considers the "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution.  *See* 18 U.S.C. § 3553(a).

In comporting with the terms of the plea agreement, the government respectfully requests that the Court sentence Mares within the applicable guideline range determined by the Court. The government believes that a guideline range custodial sentence is appropriate in this case in light of the factors contained in 18 U.S.C. § 3553(a) in order to protect the public, to reflect the seriousness of this offense, to afford adequate deterrence, and to avoid unwarranted sentencing disparities.

Mares' conduct during this case supports the government's recommendation. In coming before this Court, Mares admitted under oath that he conspired with his co-defendant to distribute approximately 2,122 grams (4.67 pounds) of actual methamphetamine in October 2019. In fact, on both of the sales, Mares was the one who brought the methamphetamine to the Confidential Source (CS) and completed the transactions. PSR ¶¶ 12, 17-18. Mares,

1 however, now claims that he only engaged in this illegal conduct because he was compelled to
2 commit the crimes out of fear from an alleged threat that Mares claims was made by the CS to
3 Mares' sister (his co-defendant's wife).[2] According to Mares' video recorded account submitted
4 to the Court as Exhibit A, he did not act of his own free will but only because of this purported
5 threat. However, not only do his admissions under oath that he made at the entry of plea on
6 June 2, 2021—when he notably made no mention of these alleged threats—contradict this
7 claim that he was not acting of his own free will, but Mares' actual conduct in this case directly
8 contradicts this unsubstantiated claim that he was forced to commit the crimes.[3]

9     For instance, during the sale on October 23, 2019, Mares conducted that transaction
10 alone. PSR ¶¶ 11-12. During the conversation between Mares and the CS, Mares made several
11 comments regarding his ability to get drugs and his tactics to avoid detection by police,
12 specifically that he could acquire up to 50 pounds of methamphetamine and that he used flip
13 phones because he does not keep the same number for very long. PSR ¶ 12. These are
14 statements consistent with an individual willfully engaging in drug trafficking, not someone
15 fearfully acting under duress. Additionally, it was Mares, not his co-defendant, who brought the
16 four pounds of methamphetamine to the deal on October 29, 2019. PSR ¶ 18. This shows that
17 Mares played a more integral role in acquiring the methamphetamine than he would like the
18 Court to believe. Being entrusted to transport and distribute these large quantities of
19 methamphetamine—drugs that had a street value of $6,500—was likely the result of a

---

[2] As more fully addressed in the government's motion for a status conference (ECF No.70), the government believes Mares' allegations negate the factual basis in the plea. As such, the government will not be moving for Mares to receive the three-level downward adjustment under USSG § 3E1.1(a) and (b) because his current accounting of the facts violate paragraph 15 of the plea agreement.

[3] Mares has not provided any discovery to support that a threat was ever made by the confidential source except for the self-serving statements made in his "mitigation" video.

3

relationship built by Mares over the course time with the source of supply. Mares also has a pending case wherein he arrested for, *inter alia*, possessing approximately 55 grams of methamphetamine in November 2019 when officers were called out to a domestic disturbance call. PSR ¶ 71. This event was in no way associated with the CS.

Yet despite this serious conduct, Mares is asking the Court to vary down 31 levels and sentence him to a non-custodial sentence of three years of home confinement. *See* ECF No. 63. The Court should decline to do so. Drug trafficking is a serious crime that has and continues to deeply scar our community. Methamphetamine is one of the most devastating and addictive drugs on the street. More than 6.1% of methamphetamine users in the United States require medical attention after use.[4] That is more than the combined sum of those who use synthetic cannabis and alcohol.[5] In the charged transactions, Mares conspired to distribute over 2,000 grams of actual methamphetamine, the distribution of which would have affected thousands of people in this community including not only the users themselves, but their immediate family, including their children, and friends. By conspiring to and distributing methamphetamine, Mares willfully and intentionally took part in a system that furthers addiction, drug overdoses, instances of mental health crises, and accidental deaths. For instance, in the year 2020, over 93,000 people died of drug overdoses, which is a significant increase.[6] Also, the sale of narcotics funds criminal organizations, which then leads to increased crime in local communities. Therefore, the offense is deserving of a significant sentence and in this case, that is a within guideline sentence.

---

[4] https://online.maryville.edu/blog/global-drug-survey-reveals-methamphetamine-to-be-the-most-dangerous-drug/ (Last accessed 3/18/2022).
[5] *Id.*
[6] https://www.washingtonpost.com/health/2021/07/14/drug-overdoses-pandemic-2020/ (Last accessed on 3/18/2022).

**b. Supervised Release**

In terms of supervised release, the government concurs with the recommendation of USPO that Mares be subjected to a five-year term of supervised release. In addition to keeping the community safe, supervised release helps to rehabilitate Mares by providing tools needed to become a productive member of society and engage in lawful employment. The government submits that any likelihood that Mares has to re-offend will be significantly reduced if he remains accountable under supervision. The government also agrees with the recommended conditions of supervised release. The recommended conditions are reasonably related to the goal of deterrence, protection of the public, rehabilitation of the Defendant, and involve no greater deprivation of liberty than is reasonably necessary for purposes of supervised release.

### III.   Conclusion

The government respectfully requests that this Honorable Court impose a within guideline sentence of imprisonment, followed by a five-year term of supervised release.

DATED: March 18, 2022

Respectfully submitted,

CHRISTOPHER CHIOU
Acting United States Attorney

 /s/  Allison Reese

ALLISON REESE
Assistant United States Attorney