───── 2:20-cr-00018-JCM-EJY ─────

1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3

4   UNITED STATES OF AMERICA,        )
                                     )   Case No. 2:20-cr-00018-JCM-EJY
5              Plaintiff,            )
                                     )   Las Vegas, Nevada
6         vs.                        )   Wednesday, March 23, 2022
                                     )   10:16 a.m. - 10:40 a.m.
7   FRANCISCO JAVIER MARES,          )   Courtroom 6A
                                     )
8           Defendant.               )   Revocation of Pretrial Release
                                     )   and Imposition of Sentence
9                                    )
                                     )
10                                   )   **C E R T I F I E D   C O P Y**
                                     )
11  _____)

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14        BEFORE THE HONORABLE JAMES C. MAHAN,
                 UNITED STATES DISTRICT JUDGE

15

16

17

       APPEARANCES:      See next page
18

19

20

    COURT REPORTER:    Samantha N. McNett, RPR, CRR, CCR
21                     United States District Court
                       333 Las Vegas Boulevard South, Room 1334
22                     Las Vegas, Nevada  89101
                       Samantha_McNett@nvd.uscourts.gov
23

24

25   Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.

```
─────────────────────── 2:20-cr-00018-JCM-EJY ───────────────────────
```

 1                          **APPEARANCES**

 2

For the Plaintiff:

 3

          **ALLISON REESE, ESQ.**
 4        **LISA CARTIER-GIROUX, ESQ.**
          UNITED STATES ATTORNEY'S OFFICE
 5        501 Las Vegas Boulevard South, Suite 1100
          Las Vegas, Nevada 89101
 6        702-388-6336

 7

For the Defendant:

 8

          **ADAM GILL, ESQ.**
 9        AISEN GILL & ASSOCIATES
          723 South Third Street
10        Las Vegas, Nevada 89101
          702-750-1590

11

12   Also present:

13        Angela Loveless, Pretrial Services Officer

14        Erica Strome, United States Probation Officer

15                          * * *

16

17

18

19

20

21

22

23

24

25

```
                    ─── 2:20-cr-00018-JCM-EJY ───
```

1          LAS VEGAS, NEVADA; WEDNESDAY, MARCH 23, 2022; 10:16 A.M.

2                              --oOo--

3                        P R O C E E D I N G S

4          THE COURTROOM ADMINISTRATOR:  This is the time set for

5     the revocation of pretrial release and imposition of sentence

6     in case number 2:20-cr-00018-JCM-EJY, United States of America

7     versus Francisco Javier Mares.

8          Counsel, please enter your appearances for the record.

9          MS. REESE:  Good morning, your Honor.  Allison Reese

10    and Lisa Cartier-Giroux on behalf of the United States.

11         THE COURT:  Thank you.

12         MR. GILL:  Good morning, your Honor.  Adam Gill on

13    behalf of Mr. Mares.  He is present at liberty.

14         THE COURT:  All right.  Thank you.  You may be seated.

15         All right.  This is a revocation of pretrial release

16    and imposition of sentence, but I'm inclined to -- I think the

17    revocation of pretrial release is moot.  I mean, we're here --

18    okay? -- for sentencing.

19         So Mr. Gill, did you have anything?

20         MR. GILL:  No Judge.

21         I will say that the charge that we were -- that

22    triggered the pretrial release revocation was denied, but,

23    again, we are here ready for sentencing and ready to proceed.

24         THE COURT:  Okay.  All right.  Are the parties ready

25    then to proceed with sentencing?

4

—————— 2:20-cr-00018-JCM-EJY ——————

1          MS. CARTIER-GIROUX:  Your Honor, we have an issue

2    with -- I think Ms. -- in part of the request for a status

3    hearing, Ms. Reese indicated that we have an issue with now --

4    with what the factual basis is for the plea.  Apparently, now,

5    which was not contemplated at the time when we entered into the

6    plea, there's an assertion that but for some threats that were

7    purportedly made by the CS, these events would not have

8    occurred.

9          THE COURT:  I understand that.

10          MS. CARTIER-GIROUX:  Uh-huh.

11          THE COURT:  But let me hear from Mr. Gill then.

12          MS. CARTIER-GIROUX:  Okay.

13          MR. GILL:  Judge, these threats were made to

14    Mr. Mares's sister who then relayed them to him that he needed

15    to participate --

16          THE COURT:  The threats were made to the sister about

17    her husband?

18          MR. GILL:  Correct.

19          THE COURT:  That's right.

20          MR. GILL:  And --

21          THE COURT:  So there was no threat to anybody in his

22    immediate family?

23          MR. GILL:  And he acknowledges and takes

24    responsibility for his actions.

25          THE COURT:  Well, I mean, he pleaded guilty.

1          I mean, I'm giving away my inclination, but I'm
2     inclined to deny it because if -- if this, in fact, were a
3     threat -- in other words, "Mr. Gill, I'm going to come over to
4     your house and kill your children," you wouldn't plead guilty.
5     You would say, "No.  Wait.  I had to" -- when you were first
6     arrested, you'd say, "Wait.  Wait.  The only reason I did this
7     was because he threatened -- Judge Mahan threatened my family."
8          MS. CARTIER-GIROUX:  Right.  I understand, your Honor.
9          THE COURT:  And that's missing.
10          And I've reviewed your -- and I don't mean to cut you
11     off.  I'll give you a chance, Ms. Cartier-Giroux.
12          MS. CARTIER-GIROUX:  Okay.
13          THE COURT:  But -- but I went through your video and
14     that just -- that just seems to back up what I'm saying,
15     that -- and I'm making this name up -- Jose Gonzalez from the
16     Cartel came over and threatened the codefendant and -- who
17     happens to be his brother-in-law.  So he pleads guilty.  And
18     then he says, "Oh, wait.  I can use that myself.  I'll use
19     that.  Yeah.  Yeah.  That was -- he threatened a member of my
20     family."  And it's so telling that the defendant doesn't say,
21     "Jose Gonzalez came over.  It's the Cartel."
22          MS. CARTIER-GIROUX:  I understand what you're --
23          THE COURT:  "The Cartel did it.  You know, the
24     Cartel."
25          It's like, you know, the big bad Government or, you

 1  know, the military industrial complex or something.  It's --

 2  there's nothing -- it's just not believable.  It's not

 3  credible.

 4          Now, let me --

 5          MS. CARTIER-GIROUX:  And that's fine, Judge.

 6          That was our issue with it is that we don't believe

 7  that those statements are -- are credible.  And we looked into

 8  it, actually, because it was an allegation made against a CS.

 9          THE COURT:  Well, of course, you did.

10          MS. CARTIER-GIROUX:  And we do not believe that those

11  statements are, in fact, credible.  And we have not been

12  provided with any real basis to believe that.  We have an idea

13  of what actually happened and we don't think that it had

14  anything to do with the CS.

15          THE COURT:  All right.  Thank you.

16          MS. CARTIER-GIROUX:  Okay.

17          THE COURT:  Now, Mr. Gill, I'll --

18          MR. GILL:  I'll submit it, your Honor.  And, again,

19  we're ready to proceed.

20          THE COURT:  And again, if -- he never -- you never

21  would have pleaded guilty.

22          Hold up.  Just be at ease a minute while the two -- he

23  never would have pleaded guilty if, in fact, that was his

24  motivating factor.  So I don't think it was.

25          Now, do you want to add anything?

─────────── 2:20-cr-00018-JCM-EJY ───────────

1            MR. GILL:  I don't, your Honor.  Thank you.

2            THE COURT:  All right.  Anything else?

3            MS. REESE:  No, your Honor.  Thank you.

4            THE COURT:  On this issue?  On this issue?

5            Okay.  Are the parties ready to proceed with

6    sentencing today?

7            MS. REESE:  Yes, your Honor.

8            MR. GILL:  Yes, your Honor.

9            THE COURT:  All right.  Mr. Gill, let me ask you and

10   the -- how do you pronounce your last name?  Mares?

11           THE DEFENDANT:  Mares.

12           THE COURT:  Mares, yes, sir.

13           You and Mr. Mares to approach the lectern.  I need

14   each one of you by a microphone.

15           MR. GILL:  Okay.  We do have mics here, your Honor.

16           THE COURT:  I know.  These are the best mics in the

17   house.  I want to get a clean record.

18           MR. GILL:  Okay.

19           THE COURT:  These are the -- some of the attorneys

20   have heard this before.

21           MR. GILL:  Yeah.

22           THE COURT:  This is the wand of the microphone.  These

23   are the longest wands that you can get.  But I -- if you're --

24   when the Court -- when you're addressing the Court, you stand

25   up, but if you stand up you're like this and the mic doesn't

1   pick up what you're saying.  And so it's -- I've tried to get

2   them -- these are the longest wands in the entire federal

3   system.  So -- okay.

4           All right.  Are the parties ready -- take a moment.

5   Parties ready to proceed with sentencing?

6           MS. REESE:  Yes, your Honor.

7           MR. GILL:  Yes, your Honor.

8           THE COURT:  All right.  Any reason why sentence should

9   not be imposed at this time?

10          MR. GILL:  No.

11          THE COURT:  Mr. Mares, this is the time set for

12  imposition of sentence upon you in case number 2:20-cr-18.  On

13  June 2, 2021, you appeared before the Court and entered a plea

14  of guilty to Count 1 of the control -- of the criminal

15  indictment, distribution of a controlled substance,

16  methamphetamine, which is a violation of 21 USC

17  Section 841(a)(1) and subsection (b)(1)(A)(viii).  Having

18  reviewed the presentence report and plea agreement, the Court

19  hereby accepts your guilty plea and adjudicates you guilty of

20  this charge.

21          Now, no objections were filed to the presentence

22  report.  Is that correct, Mr. Gill?

23          MR. GILL:  That is correct, your Honor.

24          THE COURT:  All right.  Do you have any objections?

25          MR. GILL:  I do not, your Honor.  Thank you.

2:20-cr-00018-JCM-EJY

1          THE COURT:  Mr. Mares, did you read the presentence

2    report?

3          THE DEFENDANT:  Yes, I did.

4          THE COURT:  Did you find any errors or discrepancies

5    in the report?

6          THE DEFENDANT:  No, I didn't.

7          THE COURT:  All right.  All right.  Probation

8    calculated the base offense level to be 36.  Two levels were

9    subtracted because the defendant meets criteria for safety

10   valve provision in sentencing guideline Section 2D1.1(b)(18)

11   and 5C1.2.  That's 5C1.2.  5C1.2.

12         Now, the Court may impose a sentence without regard to

13   the mandatory minimum that would otherwise apply.

14         I think he qualifies for the safety valve.

15         MR. GILL:  Thank you, your Honor.

16         THE COURT:  And so I'm going to apply that.

17         Three levels were subtracted for acceptance of

18   responsibility resulting in a total offense level of 31

19   applying the safety valve.

20         Total criminal history points are 0 resulting in a

21   criminal history category of Roman numeral I.

22         The maximum statutory term of imprisonment is life.

23         The maximum statutory fine is ten -- I'm sorry --

24   $10 million.  That's hard to say that and not chuckle, but you

25   can just write a check for that, Mr. Mares, you know, the

2:20-cr-00018-JCM-EJY

1   $10 million.  That's the Court's idea of humor.  But that's it.

2   That's the maximum, just so you understand, $10 million.

3            A special assessment of $100 per count is mandatory.

4            Based on a total offense level of 31 and a criminal

5   history category of Roman numeral I, the guideline range is 108

6   to 135 months with a supervised release term of two to

7   five years and a guideline fine range of $30,000 to

8   $10 million.  Wow.

9            All right.  Ms. Reese, any additional comments before

10  I impose sentence?

11           MS. REESE:  Yes, your Honor.  If I could just briefly

12  make the record on what sentence I'd request from this Court.

13           Pursuant to the plea agreement, the Government is

14  requesting a 108-month sentence which is the low end of the

15  advisory guideline range, as the Court just determined,

16  followed by five years of supervised release.  The Government

17  believes that this is sufficient but not greater than necessary

18  to serve the objectives of sentencing.

19           I did submit a sentencing memorandum that is at ECF 76

20  which I lay out additional reasons for the Government's

21  recommendation.  Specifically, your Honor, that the defendant

22  has come before this Court and pled guilty to distributing --

23  or conspiring, I should say, to distribute over four pounds of

24  methamphetamine.  And that was actual methamphetamine,

25  methamphetamine that is known by this Court, of course, to be

1    one of the most dangerous drugs on the market that affects

2    hundreds, if not thousands, of people in this city and across

3    the country.

4        I also wanted to note that the defendant's conduct in

5    this case calls for such a sentence specifically taking into

6    consideration the statements made in the mitigation video

7    regarding any purported or alleged threats that the Government

8    does not believe ever occurred from the CS in this case.

9    Specifically, on both instances, the defendant was who brought

10   the drugs to the confidential source.

11       The first time apparently was on behalf of his

12   codefendant.  However, this was not a mere -- as the defendants

13   say, it's an Uber situation where he just dropped something off

14   and left.  There was a conversation that occurred that detailed

15   additional drug trafficking activity such as how much

16   methamphetamine the defendant was able to acquire, the fact

17   that he doesn't use the same phone number for very long.

18       Even if, for instance, the defendant was acting on

19   behalf of his codefendant on the first deal, he then also

20   brought the drugs to the second deal where the codefendant was

21   also present.  Doesn't make much sense why he would also go to

22   that second deal if his presence was also not necessary and

23   integral to this conspiracy.

24       Of note, your Honor, as well is the pending case the

25   defendant has relating to an additional possession of

1    methamphetamine.  And that was in November of 2019 in

2    paragraph 71 of the PSR.

3              THE COURT:  That's not before me; is that right?

4              MS. REESE:  That's correct, your Honor.  That is a

5    state court matter at this time.

6              Your Honor, apart from that, the Government just

7    submits that this sentence is consistent with sentences across

8    the country.  It is necessary to deter future conduct.

9              And on that, your Honor, I will submit unless you have

10   any questions for me based on this statement and those in my

11   sentencing memorandum.

12             THE COURT:  All right.  Thank you.

13             All right.  Mr. Mares, would you like to address the

14   Court?  Would you like to have your attorney speak on your

15   behalf?  Or both of you may speak.  It's your option.

16             MR. GILL:  Sorry, your Honor.  He does want to --

17             THE COURT:  That's all right.

18             MR. GILL:  He does wish to address the Court.

19             THE COURT:  Yes, sir.  Just speak into the microphone.

20   Understand you're being recorded by the court reporter here.

21             THE DEFENDANT:  Is this a little bit better?

22             Good morning, your Honor.

23             THE COURT:  Good morning.

24             THE DEFENDANT:  First and foremost, I will agree that

25   -- I will take -- I'll admit that I was guilty to what I did.

1  Even though they're saying that the reason why I did what I did

2  was wrong, that's what I -- the whole reason why I'm here.  I

3  was just trying to help my sister.

4          Other than that, you know, whatever you decide to dish

5  out, I have to take.

6          With that being said, you know, my -- my criminal

7  history, I don't have one.  I've never been really in trouble

8  besides traffic tickets as a kid, you know.  Other than that,

9  nothing major.

10          It was a mistake, what I did.  If I could go back and

11  do it again, I wouldn't do it.  I would, you know, put it in

12  your guys' hands, but at the time when certain things happened,

13  one doesn't really think about things.  One thinks about the

14  safety of their family.  And that's what I did.

15          THE COURT:  All right.

16          MR. GILL:  And your Honor, it's clear that you read my

17  sentencing memorandum as well as viewed the video.

18          THE COURT:  Yes, sir, I have.

19          MR. GILL:  Thank you, your Honor.  And I would like to

20  note that the people on the right side of the courtroom -- or

21  your left -- are here for Mr. Mares.

22          THE COURT:  Which is fine.  Of course, they're welcome

23  to sit in.

24          MR. GILL:  Okay.  And it includes his mother, his

25  half-brother as well as his sister, one of his sisters.

1          THE COURT:  And that's fine.

2          MR. GILL:  And Judge, he does have quite a bit of

3    family support.  And he's not somebody -- and I'm not going to

4    go into reasons why or why not.  The fact is Mr. Mares sold

5    drugs, two occasions, and he pled guilty.  You know, we worked

6    out a deal.  He's here, he's accepting responsibility, and

7    that's been from day one, Judge.

8          You know, the video that your Honor viewed shows a

9    family man and somebody who works, somebody who cares for his

10   son, and somebody who cares for his extended family.  And

11   that's what he wants to continue to be able to do, Judge.

12          He's somebody who has a six-figure paying job.  The

13   video did show a statement of his earnings.  And he has no -- I

14   think he mentioned it in the video.  He has no need -- no

15   financial need to sell drugs or go down this path.  He's not

16   somebody who's on the fringe of society who needs to latch onto

17   any kind of money he can get his hands on.  That's not

18   Francisco.  Francisco is a family man, first and always.

19          He does have a son who's now 13.  I think he was -- he

20   might have been 12 in the -- when the video was made or

21   presented to your Honor, but he's 13 years old.  He's entering

22   those formative years where he does need his father in his

23   life.  His mother, as you saw in the video, lives in

24   California.  And Mr. Mares has Xavier full time.  He does visit

25   his mother and Francisco pays for those trips for him to visit

1  his mother.

2          Everything about this man, since I've been on this

3  case, your Honor, is about his family.  And that's what he's

4  wishing to be able to return to after your Court -- after this

5  Court's sentence.

6          He is and has proven that he can be supervised, Judge.

7  He's not out there on, again, the fringes of society where he's

8  committing crimes to survive or that's his way of life or

9  that's his upbringing.  He had a tough upbringing, your Honor,

10  but he's somebody who's made himself the man that stands before

11  you today, admitting and owning up to his mistakes.

12          And this is a -- I mean, obviously, your Honor has

13  seen bigger mistakes, but this is, for Mr. Francisco -- for

14  Francisco, this is as big as it gets.  He's pled to a felony.

15  He's going to be a felon and he's done so in the federal court

16  system which, you know, can be a scary proposition for anybody,

17  Judge.

18          But he's here.  He's been to all court appearances.

19  He maintains contact with me.  He absolutely can be supervised

20  if given the opportunity.  And we are asking for a term of

21  supervised release so he can serve his sentence, continue to

22  work, continue to take care of his son, continue to take care

23  of his family.

24          And with that, we'll submit it, your Honor.

25          THE COURT:  All right.  Having heard statements of

—— 2:20-cr-00018-JCM-EJY ——

1    counsel for the Government, counsel for the defendant, and the

2    defendant's remarks, having read the presentence report

3    submitted by the probation department, considering its contents

4    and the contents of the plea agreement, the Court hereby

5    accepts the terms of the plea agreement and will embody those

6    terms in the sentence provided.

7         Of course, overriding everything are the factors set

8    forth in 18 USC 3553(a) which the Court always considers when

9    determining an appropriate sentence.

10        So I'm going to vary downward to 96 months.  I'm

11   deliberately not penalizing you for -- for your position seeing

12   that your family members were threatened or whatever.  I'm

13   putting all of that aside.  Do you understand?  I'm just

14   focusing on your conduct.  I think that's what's -- you should

15   be sentenced based on, your conduct, not based on anything that

16   happened after that in the course of these proceedings that

17   doesn't bear on the conduct itself.

18        So you're hereby committed to the Bureau of Prisons

19   for a term of 96 months.  The guideline range in this instance

20   exceeds 24 months but I find that a sentence below that is

21   sufficient but not greater than necessary to have the desired

22   deterrent effect, and thus, satisfies 18 USC Section 3553(c).

23   The -- it's below the guideline range, but I find a downward

24   variance is appropriate based on the nature and characteristics

25   of the offense and the -- primarily -- take a moment.

1       MR. GILL:  I'm sorry.  Sorry.

2       THE COURT:  That's all right.  Primarily the -- the

3  circumstances of the offense and the history and

4  characteristics of the defendant.

5       A mandatory penalty assessment of $100 is required by

6  statute and due immediately.

7       Restitution does not apply in the case.

8       In light of the defendant's financial situation, the

9  fine is being waived.

10       Supervised release will be imposed for a term of five

11  years.  While on supervised release, the defendant shall comply

12  with the standard conditions of supervision recommended by the

13  Sentencing Commission and the following mandatory conditions

14  required by statute:

15       1.  You must not commit another federal, state, or

16  local crime.

17       2.  You must not unlawfully possess a controlled

18  substance.

19       3.  You must refrain from any unlawful use of a

20  controlled substance.  You must submit to one drug test within

21  15 days of release from imprisonment and at least two periodic

22  drug tests thereafter, as determined by the Court, not to

23  exceed 104 tests annually.

24       4.  You must cooperate in the collection of DNA as

25  directed by the probation officer.

2:20-cr-00018-JCM-EJY

1        In addition, the following special conditions are

2   imposed:

3        1.  Mental Health Treatment.  You must participate in

4   a mental health treatment program and follow the rules and

5   regulations of that program.  The probation officer, in

6   consultation with the treatment provider, will supervise your

7   participation in the program as to provider, location,

8   modality, duration, intensity, and so forth.

9        2.  No Contact.  You must not communicate or otherwise

10   interact with Renalto Consuegra-Clemente, either directly or

11   through someone else, without first obtaining the permission of

12   the probation officer.

13        3.  Search and Seizure.  You must submit your person,

14   property, house, residence, office, vehicle, papers, computers

15   (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic

16   communications or data storage devices or media to a search

17   conducted by a United States probation officer.  Failure to

18   submit to a search may be grounds for revocation of release.

19   You must warn any other occupants that the premises may be

20   subject to searches pursuant to this condition.

21        The probation officer may conduct a search under this

22   condition only when reasonable suspicion exists that you have

23   violated a condition of supervision and that the areas to be

24   searched contain evidence of this violation.  Any search must

25   be conducted at a reasonable time and in a reasonable manner.

1          Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  All right.  Ms. Loveless, do you have a

4   copy of those conditions?

5          If you would submit them to the defendant here in open

6   court -- thank you -- and he may study them as he sees fit.

7          All right.  Mr. Mares, in your plea agreement, you

8   waived your rights to appeal your conviction and sentence.

9   Nevertheless, there may be certain appellate rights that cannot

10  be waived.

11         If you desire to appeal your conviction and sentence,

12  you must file notice of appeal with this court within 14 days

13  from today's date.

14         In the event you cannot afford to pay the costs on

15  appeal, you may request permission to proceed in forma

16  pauperis.  If you require the services of an attorney to assist

17  on the appeal and cannot afford to pay an attorney, one will be

18  appointed to represent you at no cost to yourself but at

19  Government expense.  And if you require any transcripts of any

20  proceedings in order to prosecute your appeal and cannot afford

21  to pay for those transcripts, they also will be provided at

22  Government expense.

23         Do you understand that?

24         THE DEFENDANT:  I do.

25         THE COURT:  All right.  Now, we need a surrender date.

2:20-cr-00018-JCM-EJY

1          THE COURTROOM ADMINISTRATOR:  Yes, your Honor.

2    June 24, 2022 by 12:00 noon.

3          THE COURT:  At 12:00 noon, right?

4          THE COURTROOM ADMINISTRATOR:  Yes.  Correct.

5          THE COURT:  All right.  Now, what's going to happen,

6    Mr. Mares, is in 75 days -- it takes about two and a half

7    months -- the Bureau of Prisons is going to designate you to a

8    facility.  So they'll send you a letter in 75 days.  So it's

9    not going to come next week, but it will be two and a half

10   months.  It takes them that long.  So they'll send you a letter

11   saying "This is the facility to which you've been designated,"

12   and it's your obligation to be at that facility at noon -- on

13   or before noon on June 24th.

14          Do you understand that?

15          THE DEFENDANT:  I do.

16          THE COURT:  Now, you don't have to be there at, you

17   know, 5:00 in the morning, but I would there 15 minutes early

18   because if you aren't there at noon straight-up, they assume

19   you have absconded and you don't want to start your

20   incarceration off that -- on that foot.

21          Okay?  Do you understand?

22          THE DEFENDANT:  I do.

23          THE COURT:  All right.

24          MR. GILL:  Your Honor, can we make --

25          THE COURT:  Designations?

———— 2:20-cr-00018-JCM-EJY ————

1        MR. GILL:  Yes.  Thank you.  As close to Nevada -- Las
2   Vegas as possible.  I know that's --
3        THE COURT:  Any facility close to Las Vegas?
4        MR. GILL:  Yes.
5        THE COURT:  Okay.  That's -- we'll use your term, "as
6   close as possible to Las Vegas."
7        MR. GILL:  Thank you, your Honor.
8        THE COURT:  Okay.  And hopefully they'll be able to
9   comply with that at the Bureau of Prisons.
10        All right.  Anything else to come before the Court?
11        Anything from the Government?
12        MS. REESE:  No, your Honor.  Thank you.
13        THE COURT:  Anything from the defense?
14        MR. GILL:  No.  Thank you, your Honor.
15        THE COURT:  Thank you.  We'll be in recess.
16        (The proceedings concluded at 10:40 a.m.)
17                           *  *  *
18
19
20
21
22
23
24
25

─ 2:20-cr-00018-JCM-EJY ─

--o0o--

COURT REPORTER'S CERTIFICATE


    I, SAMANTHA N. MCNETT, Official Court Reporter, United

States District Court, District of Nevada, Las Vegas, Nevada

certify that the foregoing is a correct transcript from the

record of proceedings in the above-entitled matter.


Date:  June 4, 2022


                              /s/ Samantha N. McNett
                              Samantha McNett, RPR, CRR, CCR